**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. |
| | : | |
| $33,075.00 IN UNITED STATES CURRENCY, | : | |
| | : | |
| Defendant. | : | |
| | : | |
| [CLAIMANT:  DAVID CLASS] | : | October 22, 2018 |

VERIFIED COMPLAINT OF FORFEITURE

Now comes Plaintiff, United States of America, by and through its attorneys, John H.

Durham, United States Attorney for the District of Connecticut, and David X. Sullivan, Assistant

United States Attorney, and respectfully states that:

1.     This is a civil action in rem brought to enforce the provision of 21 U.S.C. §

881(a)(6), which provides for the forfeiture of proceeds traceable to the exchange of controlled

substances in violation of the Controlled Substances Act, 21 U.S.C. §§ 801 et seq.

2.     This Court has jurisdiction over this matter by virtue of 28 U.S.C. §§ 1345 and

1355.  Venue is appropriate in the District of Connecticut by virtue of 28 U.S.C. § 1395(b).

3.     The Defendant is $33,075.00 in United States Currency ("Defendant Currency").

4.     The Defendant Currency is located within the jurisdiction of this Court.

5.     On July 25, 2018, David Class submitted an administrative claim of ownership to

the Defendant Currency.

1

**Background of Investigation**

6.      On July 5, 2018, David Class ("Class") arrived at Bradley International Airport in Windsor Locks, CT to board a flight to San Juan, Puerto Rico.  Class arrived at the Jet Blue ticket counter at 4:45 a.m. to purchase his ticket for a flight boarding at 5:25 a.m. and departing at 5:45 a.m.

7.      Through their training and experience, law enforcement knows that this is would be a very small window of time to get through security screening to catch a flight that boarded so soon after Class purchased his ticket.  Law enforcement is familiar with the methods in which bulk cash smugglers attempt to pressure airport screeners to clear passengers for flight.

8.      At 5:03 a.m., during the airport security's bag screening process, several anomalies were noticed within Class's carry-on bag, more specifically, bulk masses inside the soles of his sneakers and in the pockets of his pants which were both located within the carry-on.

9.      During the secondary screening process, law enforcement again noticed on X-Ray the existence of an unidentified bulk mass within the clothing.  This discovery led to law enforcement's initiating a hand search of the carry-on bag.  During the hand search it was revealed that the bulk mass was an amount of United States Currency.  Law enforcement asked Class how much money was located in the bag and he replied "$8,000."  Law enforcement then asked Class how much money was in the shorts that he was wearing.  Class responded "$900, but that's *my* money."

10.     Law enforcement then began an interview of Class in a public area of the airport. During this public interview, Class was not restrained in any way.  Further, Class was advised that he was free to leave at any time, and that he was free to stop answering questions, as well.

11.     Class told law enforcement that he knew the bulk currency was in his bag and that it was actually $30,000 in United States Currency.  Class told law enforcement that he kept the money inside the carry-on in the soles of his shoes, and in the pants pockets, so he would not be robbed.  When asked by law enforcement who would rob him in the airport, Class mumbled something unintelligible.

12.     Class told law enforcement that he had earned the money from a barber shop and a bar, both of which he claimed to own.  Class said he owned the Touch of Class Barber Shop in Springfield, MA and the Ravoli Bar in Chicopee, MA.  When asked by law enforcement if the bar was in his name, Class replied, "no."  Class also told law enforcement that the liquor license was not in his name and that he was more, "like a manager", of the bar.

13.     Law enforcement asked Class where exactly the currency came from.  Class said that there was $15,000 in the envelope that came from his Berkshire Bank account.  Class was referring to the envelope inside the carry-on, located in the pants pocket, which actually contained $13,000.  When asked by law enforcement where the bank bands were that should be wrapped around the currency, if it came from a bank, Class could not give an answer.

14.     Class told law enforcement that he was flying to Puerto Rico to bring the money to his family, who needed his help.  When law enforcement asked what kind of help his family needed, Class just raised his shoulders, and said nothing.  Law enforcement asked to view

Class's cellphone to which Class refused.  At this point, Class said he wished to leave and was allowed to leave without further delay.

15.     While Class was being interviewed by law enforcement, a trained law enforcement narcotics detection dog did a free air search in the vicinity of Class's carry-on and alerted to the odor of narcotics within his bag.

16.     Class has an arrest record involving weapons and narcotics offenses in several states going back to 1994.  In 2010, Class was arrested by the Drug Enforcement Administration in Springfield, MA for selling cocaine.  In 2013, the local police arrested Class for trafficking and distribution of cocaine in Springfield, MA.  In 2015, the Springfield Police arrested Class again for being in possession of over a kilogram of cocaine.

17.     Based on the above information, it is believed that $33,075.00 in United States Currency constitutes proceeds from the illegal sale and distribution of narcotics and is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

18.     The Defendant Currency represents proceeds traceable to the exchange of controlled substances in violation of the Controlled Substances Act, 21 U.S.C. §§ 801 et seq., and is, therefore, subject to forfeiture to the United States of America pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE, the United States of America prays that a Warrant of Arrest In Rem be issued for $33,075.00 in United States Currency; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the property to be condemned and forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other relief as this Court may deem

4

just and proper, together with the costs and disbursements of this action.

Respectfully submitted,

JOHN H. DURHAM
UNITED STATES ATTORNEY

  /s/ John B. Hughes
JOHN B. HUGHES
CHIEF, CIVIL DIVISION
ASSISTANT U. S. ATTORNEY


*/s/ David X. Sullivan*
DAVID X. SULLIVAN
ASSISTAN U.S. ATTORNEY
157 CHURCH STREET, 25TH FLOOR
NEW HAVEN, CT  06510
(203) 821-3700
FEDERAL BAR # ct03793
David.Sullivan@usdoj.gov

<u>DECLARATION</u>

I am a Task Force Officer for the United States Customs and Border Protection, and the agent assigned the responsibility for this case.

I have reviewed the contents of the foregoing Verified Complaint of Forfeiture and the statements contained therein are true to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 22nd day of October, 2018.


    */s/ Zachary Kashmanian*
ZACHARY KASHMANIAN
TASK FORCE OFFICER
U.S. CUSTOMS AND BORDER PROTECTION